IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAVID M. YOUNG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 13-0091-WS-M |
| | ) |
| GEORGE MAY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on the Motion to Dismiss (doc. 87) filed by defendant George May. The Motion has been briefed and is now ripe for disposition.

**I.     Background.**

Plaintiff, David M. Young, a federal prisoner proceeding *pro se*, brought this *Bivens* action against a pair of defendants, including George May, an Assistant U.S. Attorney in the Southern District of Alabama, solely in his individual capacity.[1] May was the lead prosecutor in criminal proceedings brought against Young in this District Court in 2006, pursuant to which Young is now serving a 120-month term of imprisonment.

The Amended Complaint filed on February 15, 2013, alleges that May "acted outside the scope of his office as a [*sic*] Assistant U.S. Attorney … by including a prior exhausted federal register number: 04152-003, in the warrant of arrest as an idendification [*sic*] for petitioner."

---

[1] Plaintiff originally brought claims against May in his official capacity, as well; however, the official-capacity claims were dismissed by the U.S. District Court for the District of Columbia on November 21, 2011. (*See* doc. 46.) Dismissal of those claims was affirmed by the U.S. Court of Appeals for the District of Columbia Circuit by mandate issued on or about January 23, 2013. (*See* doc. 71.) The appellate court remanded the case in certain other particulars, ultimately prompting the District Court to transfer what was left of the action to the U.S. District Court for the Southern District of Alabama on February 4, 2013. (*See* doc. 70.) In its present posture, this action involves *Bivens* claims brought by Young against May (solely in his individual capacity) and against Young's former defense attorney, Joe Carl Jordan. The claims against Jordan are beyond the scope of this Order.

(Doc. 73, at 6.)  According to Young, "[t]his intentional act resulted in petitioner being arrested by the U.S. Marshall [*sic*] Service, and placed into the custody of the Federal Bureau of Prisons, in open population with convicted and sentenced federal prisoners for 30 days" prior to Young's arraignment in this judicial district.  (*Id.*)  Young maintains that "the placement of petitioner in prison in violation of the Fifth Amendment, caused psychological harm in petitioners [*sic*] mental capacity to properly function during criminal proceedings of the current arrest."  (*Id.*)

Documents referenced in the Amended Complaint and in both sides' briefs confirm that Young was indicted in this District Court on December 27, 2006 in Criminal No. 06-0278-KD-N and charged with conspiring to possess with intent to distribute marijuana, and possession with intent to distribute marijuana, all in violation of 21 U.S.C. §§ 841(a)(1) and 846.  (Case No. 06-0278, at doc. 1.)[2]  The Clerk of Court issued a Warrant for Arrest for Young on February 27, 2007.  (*Id.* at doc. 6.)  However, that warrant was not executed until August 26, 2009 (some 30 months later), when the U.S. Marshal's Service ("USMS") finally arrested Young in Tennessee.  (*Id.* at doc. 21.)  The iteration of the Warrant for Arrest that the USMS executed and filed contained a series of numbers and letters handwritten in the upper right-hand corner, including the following: "04152-003 USM GCRT."  (*Id.*)[3]  The copy of the warrant originally issued by the Clerk of Court and maintained in the court file displayed no such markings.  (*Id.* at doc. 6.)

---

[2]   These documents are properly considered for purposes of May's Motion to Dismiss because they were referenced in, and central to, the Amended Complaint.  *See Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (federal courts evaluating Rule 12(b)(6) motions may consider an exhibit "in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss"); *see also Quail Cruises Ship Management Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310 n.5 (11th Cir. 2011) (similar).

[3]   There is no indication on the face of the warrant as to who made the subject markings, when or under what circumstances they were made, or how (if at all) this information was used by anyone in the course of locating, arresting, securing, detaining, or transporting Young.  The Amended Complaint alleges that May placed this data (which includes Young's federal register number, essentially an inmate ID number) on the warrant as a means of identifying Young (doc. 73, at 8).  That factual allegation is accepted as true for purposes of May's Rule 12(b)(6) Motion, notwithstanding May's steadfast denial that he was the person who recorded that information on the warrant.  *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (on a motion to dismiss under Rule 12(b)(6), court must "accept the facts alleged in the complaint as true" and "draw all reasonable inferences in the plaintiff's favor").

As set forth in the Amended Complaint, Young's theory is that May's inclusion of the "04152-003" notation on the returned copy of the arrest warrant harmed him because that number (Young's federal register – or inmate – number) was used by the USMS to place Young in the custody of the Federal Bureau of Prisons ("BOP") in a federal prison. Plaintiff complains that he was temporarily housed with convicted and sentenced federal prisoners and clothed in "standard Tan kackis [sic] of convicted and sentenced federal prisoners" (doc. 73, at 7) for a period of approximately five weeks, before being transported to this judicial district for arraignment. Young attributes his treatment by the USMS and the BOP to May's "inclusion of the prior register number: 04152-003 … as a [sic] identification for the warrant of arrest." (*Id.* at 8.)[4]

## II.     Analysis.

### A.     *Legal Standard for Motion to Dismiss under Rule 12(b)(6).*

Defendant May has moved for dismissal of the Complaint for failure to state a claim upon which relief can be granted. To withstand Rule 12(b)(6) scrutiny, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[ ] [his] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). "This necessarily requires that a plaintiff

---

[4] In briefing May's Rule 12(b)(6) Motion, Young explains that the register number relates to his conviction in federal court in 1990, following which he served a 151-month prison sentence. According to Young, the register number 04152-003 was assigned to him in connection with the 1990 sentence, and had no further application as of 2007 because, by that time, Young had completed his term of imprisonment and post-imprisonment supervised release, such that "Plaintiff was under no sentence, supervision or probation at the time of the indictment of 2006." (Doc. 99, at 2.) The Court takes judicial notice, however, that the BOP's database (accessible via the inmate locator tool at www.bop.gov) continues to use the register number 04152-003 to identify Young to this day. This information is corroborated by the signature block and return address from Young's own filings in this matter, which prominently include the identifier 04152-003. (*See* doc. 73, at 1, 31.) What plaintiff's own documents show, then, is that the BOP did not assign a new or different register number to Young in connection with his conviction on the 2006 indictment (which sentence he is presently serving at FCI Forrest City), but continued to identify Young by the same register number it had always used.

include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require[ ] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As the Eleventh Circuit has explained, *Twombly/Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *see also Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth.").

For purposes of the immunity defenses raised by defendant May, the factual allegations of the Amended Complaint must be accepted as true. *See Kalina v. Fletcher*, 522 U.S. 118, 122, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) ("In determining immunity, we accept the allegations of respondent's complaint as true.").

### B. *Prosecutorial Immunity.*

As an initial matter, May contends that Young's claims should be dismissed pursuant to the doctrine of prosecutorial immunity. Under well-settled law, "[a] prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999). Such immunity "extends to a prosecutor's acts undertaken … in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Id.* (internal quotation marks omitted); *see also Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 (11th Cir. 2002) ("A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government."). There are, however, limitations to prosecutorial immunity. "Although absolutely immune for actions taken as an advocate, the prosecutor has only qualified immunity when performing a function that is not associated with his role as an advocate for the state." *Jones*, 174 F.3d at 1281-82; *see also Rowe*, 279 F.3d at 1280 (to the extent that prosecutor "stepped out of his prosecutorial role" to perform investigative functions, he had only qualified immunity, not absolute immunity) (citations and internal quotation marks omitted). Thus, "[a] prosecutor is not entitled to absolute immunity when he performs the investigative

functions normally performed by a detective or police officer." *Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010) (citations and internal quotation marks omitted).

The critical question for purposes of application of this doctrine here is whether May is being sued for an action taken while performing his function as an advocate for the Government. If so, absolute prosecutorial immunity applies and the Complaint must be dismissed as to him, pursuant to Rule 12(b)(6), Fed.R.Civ.P. If not, however, prosecutorial immunity does not apply and the claims against May must be analyzed pursuant to the traditional qualified immunity framework.

As the Supreme Court has explained, the law is "quite clear" that a prosecutor's "activities in connection with the preparation and filing of two of the three charging documents – the information and the motion for an arrest warrant – are protected by absolute immunity." *Kalina*, 522 U.S. at 129.[5] Whatever else may be said, defendant May's alleged act of writing Young's register number on the arrest warrant is an activity taken in connection with the preparation and filing of an arrest warrant, which (by the teachings of *Kalina*) is protected by absolute immunity. By listing Young's register number as identifying information on the warrant, May was not performing an investigative function, nor was he acting as a complaining witness.[6] He was acting as an advocate. Making a notation on the arrest warrant to identify

---

[5] *See also Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012) ("A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity."); *Sheehan v. Colangelo*, 2002 WL 31840792, *1 (2nd Cir. Dec. 16, 2002) ("*Kalina* makes clear that the process of selecting which facts to include in an arrest warrant … is squarely within the scope of a prosecutor's adversarial duties."); *Saterdalen v. Spencer*, 2012 WL 2885167, *4 (D. Minn. July 13, 2012) ("Reviewing, approving, and executing the Arrest Warrant Complaint were prosecutorial functions that were essential parts of the commencement of criminal charges, subject to absolute prosecutorial immunity."); *cf. Stromas v. Florida*, 2011 WL 971628, *2 (N.D. Fla. Mar. 16, 2011) ("Generally, the Supreme Court has made clear that prosecutorial immunity may not apply when a prosecutor is not acting as an officer of the court but is instead engaged in certain investigative or administrative tasks," such as conducting investigative work before an arrest, making statements to the press, providing legal advice to police regarding pre-indictment investigation techniques, or making false statements in an affidavit supporting application for arrest warrant).

[6] Young argues that "[t]he inclusion of information by May" on the arrest warrant "reversed May's role as an advocate into a 'complaining witness,' by submitting sworn testimony under fraud." (Doc. 99, at 3.) It did nothing of the sort. Unlike the prosecutor in *Kalina*, May is not accused of certifying the truth of information contained in an arrest warrant (Continued)

Young by his BOP inmate number was part and parcel of May's role as an advocate because the function of preparing and processing arrest warrant documents is "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009) (citation omitted).

All of Young's claims against May arise from his inclusion of the register number on the warrant, which was an action May took while performing his function as an advocate for the Government. For that reason, May is entitled to absolute prosecutorial immunity for all claims and causes of action asserted against him by Young.[7]

### C.  *Qualified Immunity.*

Even if May were not performing an advocacy function in allegedly writing Young's federal register number on the arrest warrant, he would remain entitled to dismissal of plaintiff's claims under the doctrine of qualified immunity.

"Qualified immunity protects government officials who were sued individually unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013) (citation and internal

---

affidavit. *Cf. Kalina*, 522 U.S. at 129-31 (in executing certification under penalty of perjury, prosecutor "performed an act that any competent witness might have performed," such that "the only function that she perform[ed] in giving sworn testimony is that of a witness"). In contrast to *Kalina*, plaintiff here does not allege facts that May executed a sworn affidavit, certified anything under penalty of perjury, or did anything that would cross (or blur) the line from advocate to witness or from advocate to investigator. The conduct found not to be immunized in *Kalina* simply finds no analog in May's activities as alleged in Young's amended pleading.

[7]  In one of his briefs, Young complains that May's conduct was designed to have him placed in federal custody. (Doc. 99, at 2-3.) A prosecutor's activities seeking detention and imprisonment of a defendant at the outset of a criminal prosecution lie within the heartland of his role as an advocate for the Government. As such, they are entitled to absolute immunity, no matter how diabolical the plaintiff insists the prosecutor's motivations were. *See Kalina*, 522 U.S. at 126 ("acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity") (citation omitted).

quotation marks omitted). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability." *Id.* (citation omitted).

"Under the well-defined qualified immunity framework, a public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) (citation and internal quotation marks omitted). After the defendant does so, "the burden shifts to the plaintiffs to show that qualified immunity is inappropriate" by alleging facts that the plaintiffs' constitutional rights were violated, and that the rights involved were "clearly established" at the time of the purported misconduct. *Id.*; *see also Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011) (two-part framework involves, first, "whether the Plaintiffs' allegations … establish a constitutional violation," and second, "that constitutional right must be 'clearly established,' such that a reasonable officer should have known that his conduct violated the plaintiff's constitutional rights") (citation omitted). "Qualified immunity does not apply where the facts show that the official violated the plaintiff's constitutional rights and where the law clearly established those rights at the time of the alleged misconduct." *Morton*, 707 F.3d at 1281.

Young insists that May was acting outside his discretionary authority because May's authority to prepare an indictment and obtain an arrest warrant purportedly did not "extend to information in the warrant of arrest, that had Plaintiff illegally imprisoned for an indictment in which that information did not apply." (Doc. 99, at 3-4.)[8] "[A] government official can prove he acted within the scope of his discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (citation omitted); *see also Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007) (similar). Thus, the term "discretionary authority" encompasses "all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Roberts*, 643 F.3d at 903 (citations and internal quotation marks omitted).

---

[8] Plaintiff's Amended Complaint alleges that May's inclusion of the register number on the warrant "was a deliberate act outside the scope of his duties." (Doc. 73, at 8.) Such a legal conclusion is not credited for purposes of a Rule 12(b)(6) analysis. *See Mamani*, 654 F.3d at 1153.

An Assistant U.S. Attorney's duties include a wide range of functions relating to the prosecution of offenses against the United States. *See* 28 U.S.C. §§ 542, 547. Such duties plainly include making application for arrest warrants, preparing associated documents, and writing notes on those documents. On the factual allegations of the Amended Complaint, it cannot be plausibly contended that May either (i) was not acting pursuant to the performance of his duties as an Assistant U.S. Attorney when he performed the challenged actions, or (ii) that such actions were beyond the scope of the broad grant of authority conferred on federal prosecutors. *See* Rule 9(a), Fed.R.Crim.P. (indicating that government attorneys are empowered to request issuance of arrest warrants).[9] Plaintiff's apparent theory that May lacked authority to write an identifying number in the margins of the arrest warrant is facially meritless. Indeed, it appears that he is arguing that May could not have been acting within his authority because Young contends the act violated Young's rights. But that sort of tautology is not the proper inquiry under applicable law. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) ("discretionary authority" inquiry is "not whether it was within the defendant's authority to commit the allegedly illegal act," but is instead "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties") (citation omitted). The Court readily concludes that the complained-of actions allegedly performed by May were within, or reasonably related to, the outer perimeter of his discretionary duties as a federal prosecutor, so as to satisfy this prong of the qualified immunity analysis.

It being clear that the actions May is accused of taking were done pursuant to the performance of his duties and within the scope of his authority, his qualified immunity defense turns on whether Young has alleged sufficient facts to support a finding of a constitutional violation under clearly established law. *See Chandler v. Secretary of Florida Dep't of Transp.*, 695 F.3d 1194, 1198 (11th Cir. 2012) ("To survive a motion to dismiss based upon qualified immunity, the plaintiff must have alleged sufficient facts to support a finding of a constitutional

---

[9] *See generally United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (recognizing that "United States Attorneys retain broad discretion to enforce the Nation's criminal laws") (internal quotations omitted); *United States v. Holloway*, 29 F. Supp.2d 435, 438 (M.D. Tenn. 1998) ("United States Attorneys have broad discretion to enforce the criminal laws and determine when and whom to prosecute").

violation of a clearly established law."). The Court answers this question in the negative. Again, the wrong ascribed to May in the Amended Complaint was "including a prior exhausted federal register number: 04152-003, in the warrant of arrest as an idendification [*sic*] for petitioner." (Doc. 73, at 6.) Young complains that May's inclusion of this number "resulted in petitioner being arrested by the U.S. Marshall Service, and placed into the custody of the Federal Bureau of Prisons," all in a manner that he contends was improper and violative of his constitutional rights. (Doc. 73, at 6.) To be clear, Young's pleading does not allege that May wrongfully imprisoned him, but instead merely alleges that May wrote down outdated identifying information that USMS and BOP used as a basis for wrongfully imprisoning him.[10]

---

[10] Even the phrase "wrongfully imprisoned" is something of a misnomer here. Young does not contend that USMS lacked authority to arrest and detain him. He simply objects to being detained prior to arraignment in a BOP facility, as opposed to a municipal or county jail or lock-up. (*See* doc. 109, at 2 ("Plaintiff would not even have a case against May, had the warrant been issued, [and] Plaintiff arrested & detained & held in a county jail" until arraignment).) Plaintiff's premise that the Constitution guarantees an arrestee's right to be detained in a non-BOP facility that does not house convicted federal inmates is deeply flawed. The Amended Complaint does not allege that Young was exposed to conditions of confinement that were unsafe, unsanitary, overcrowded, or the like. Rather, he is simply arguing that the USMS was obliged under the Fifth Amendment to detain him in a local jail that did not also house convicted and sentenced federal prisoners. Applicable case law is heavily to the contrary. *See, e.g., Francis v. Johns*, 2013 WL 1309285, *6 (E.D.N.C. Mar. 28, 2013) ("As other courts have held, the practice of housing civil detainees with convicted inmates does not, by itself, violate a civil detainee's constitutional rights."); *Silvera v. Connecticut Dep't of Corrections*, 726 F. Supp.2d 183, 196 (D. Conn. 2010) ("absent allegations that the pretrial detainee suffered an injury from being housed with … convicted inmates, or that the placement with convicted inmates was intended to punish the pretrial detainee, the pretrial detainee's rights to due process are not violated merely because he is forced to share a cell with a convicted prisoner"); *Burciaga v. County of Lenawee*, 123 F. Supp.2d 1076, 1078 (E.D. Mich. 2000) ("the overwhelming weight of persuasive authority holds that unless the state has an intent to punish, or at least displays an indifference toward potential harm to an inmate, pre-trial detainees have no due process right to be housed separately from sentenced inmates"); *see generally Powell v. Sheriff, Fulton County Georgia*, 2013 WL 842646, *5 (11th Cir. Mar. 7, 2013) (pretrial detainees have "no constitutional right, much less a clearly established one, to be held in a particular cell or a separate area of a Jail and not be placed back in the general Jail population"); *Falcon v U.S. Bureau of Prisons*, 852 F. Supp. 1413, 1420 (S.D. Ill. 1994) ("[a] pre-trial detainee does not have the right to be housed at the facility of his choice"). On the strength of these authorities, a compelling argument could be made that Young has not alleged facts that, if proven, would establish a Fifth Amendment violation by anyone.

Here's the fundamental problem with plaintiff's theory of liability: All he accuses May of doing is placing a BOP inmate number (associated with Young's prior federal incarceration) on Young's arrest warrant. That act did not violate clearly established statutory or constitutional rights. Certainly, it was not clearly established during the relevant time period that placing an identifying number on an indicted defendant's arrest warrant implicates Fifth Amendment concerns or otherwise violates that defendant's rights. Plaintiff has not identified a single authority to support that proposition, and the Court is aware of none. In fact, plaintiff admits that "[t]he reason there is no case law or rule against such a practice … is because no such authority exists." (Doc. 99, at 5.) That is the point. Simply put, the complained-of conduct by May, as set forth in the Amended Complaint, is not "so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." *Rehberg*, 611 F.3d at 838 (citation omitted).[11]

---

[11] In briefing the Rule 12(b)(6) Motion, plaintiff accuses May of "intentionally includ[ing] fraudulent information for an indictment arrest that did not exist," and insisting that "May had every available resource at his disposal to determine the fact that Plaintiff was under no federal or state sentence, supervision, probation or parole." (Doc. 99, at 4.) Such rhetoric plays fast and loose (and takes unwarranted and unreasonable liberties) with the facts as pleaded in the Amended Complaint. The register number written on the arrest warrant was not fraudulent. It was, instead, the register number that the BOP assigned to Young in serving his 1990 federal sentence, and is the same number that Young admits the BOP assigns to him today. Thus, the register number was an accurate, correct identifier for Young. Contrary to plaintiff's theory, inclusion of that register number on the arrest warrant was not a representation by May that Young was then serving a federal or state sentence, supervision, probation or parole. It says nothing of the sort, and supports no such reasonable inference. May's conduct of accurately writing Young's BOP inmate number in the upper right hand corner of the warrant did not violate clearly-established law or compromise clearly-established federal constitutional or statutory rights. This inmate number was not a secret piece of data of which the USMS and BOP would have been ignorant but for May's notation; rather, it is readily accessible and available via BOP's database on BOP's public website. USMS and BOP would unquestionably have known this number, even if May had not written it on the warrant. Moreover, the only constitutional violation alleged in the Amended Complaint relates to what USMS and BOP did with that information (*i.e.*, they used it to detain Young in a federal prison for several weeks before arraignment), not to May's disclosure of such public information in the first place. Any constitutional beef that Young has is with USMS or BOP, not with May, because they classified him "as a federal convicted prisoner under the register number: 04152-003," rather than as a pretrial detainee. (Doc. 73, at 7.) However, both of those entities were dismissed from this lawsuit by the U.S. District Court for the District of Columbia, as affirmed by the U.S. Court of Appeals for the District of Columbia Circuit. (*See* doc. 46, at 1; doc. 71, at 1.) Plaintiff has
(Continued)

**III.    Conclusion.**

For all of the foregoing reasons, defendant George May's Motion to Dismiss (doc. 87) is **granted**.  Plaintiff's claims against May in his individual capacity are barred by the doctrine of absolute prosecutorial immunity or, alternatively, by the doctrine of qualified immunity.  Plaintiff's claims against defendant May are **dismissed with prejudice**, and the Clerk of Court is directed to **terminate** George May as a party defendant.  This action will proceed as to plaintiff's claims against the sole remaining defendant, Joe Carl Jordan.

DONE and ORDERED this 22nd day of May, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

identified neither facts nor law under which May might be held accountable for any constitutional transgressions that may have been committed by USMS and BOP, in misclassifying him during pre-arraignment detention.