IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAVID M. YOUNG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 13-0091-WS-M |
| | ) |
| GEORGE MAY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on defendant Joe Carl Jordan's Motion to Dismiss (doc. 105). The Motion has been briefed and is now ripe for disposition.[1]

**I.    Background.**

Plaintiff, David M. Young, a federal prisoner proceeding *pro se*, brought the latest incarnation of his *Bivens* action against the two lawyers principally involved in his underlying federal criminal proceedings. In particular, Young sued Assistant U.S. Attorney George May (the lead prosecutor on the case) in his individual capacity, and Joe Carl Jordan (Young's

---

[1] In his brief opposing the Motion to Dismiss, plaintiff invokes the familiar line of authority that *pro se* filings are to be liberally construed. *See, e.g., Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). This Court has adhered to that principle here. Nonetheless, Young's *pro se* status does not excuse him from compliance with procedural rules and court orders. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 n.2 (11th Cir. 2011); *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (explaining that "we are to give liberal construction to the pleadings of pro se litigants," but that "we nevertheless have required them to conform to procedural rules") (citation omitted); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (a *pro se* party "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure," and may be sanctioned "for failure to comply with court orders"); Local Rule 83.9(b). Nor does the leniency afforded *pro se* litigants give this Court license to serve as *de facto* counsel for Young or to rewrite otherwise deficient pleadings to help him navigate past the Rule 12(b)(1) and Rule 12(b)(6) challenges posed by defendant Jordan. *See GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

retained defense attorney). The undersigned entered an Order on May 22, 2013, granting defendant May's motion to dismiss on the ground that "Plaintiff's claims against May in his individual capacity are barred by the doctrine of absolute prosecutorial immunity or, alternatively, by the doctrine of qualified immunity." (Doc. 110, at 11.) That leaves Young's claims against Jordan, which are the subject of the present Motion to Dismiss.

Young's claims against both defendants center on his allegation that they caused or allowed him to be detained in a Federal Bureau of Prisons ("BOP") facility for approximately five weeks prior to his arraignment in this District, during which time he was placed "in open population with convicted and sentenced prisoners." (Doc. 73, at 6.)[2] With respect to defendant Jordan, plaintiff's Amended Complaint alleges that he "committed malfeasance by intentionally conspiring with defendant George May, when [Jordan] refused to intervene … to promptly have his client extracted from the custody of the Federal Bureau of Prisons." (*Id.*) In particular, Young alleges that when he notified Jordan of his BOP custody status, "Counsel refused to intervene, and told petitioner to just sit back and see what all they would do." (*Id.* at 8.) Young further alleges that Jordan failed to hold BOP accountable for $200 in personal funds that Young claims belonged to him but were not returned by BOP. According to the Amended Complaint, rather than initiating legal process against BOP for the return of the $200, Jordan simply provided Young with a personal check for that amount, which Young deemed an unsatisfactory accommodation. (*Id.* at 9.)[3] In sum, the Amended Complaint alleges that Jordan violated Young's Fifth Amendment rights "by failing to intervene to stop the illegal imprisonment perpetrated on petitioner," "failing to protect his clients [*sic*] interest and Constitutional Rights," and participating in "the intentional coverup of the funds being held by the (FBOP)," all of which allegedly show that Jordan conspired with May "to coverup the civil liability connected to the Fifth Amendment violations" perpetrated against Young. (*Id.* at 9-10.)

---

[2] The Complaint reflects that Young was taken into custody by the U.S. Marshal's Service in West Point, Tennessee, and that his temporary housing in BOP facilities was incident to the Marshal's Service's transportation of him back to this judicial district for arraignment.

[3] In briefing the Motion to Dismiss, plaintiff clarifies that the factual allegations about the $200 reimbursement were not intended as a separate, freestanding claim against Jordan, but were "alleged only to show Jordans [*sic*] failure of Sixth Amendment protection & furtherance of his intentional negligence." (Doc. 126, at 3.) The Court therefore will not treat the $200 issue as a separate claim or cause of action herein.

Defendant Jordan now moves for dismissal of these claims pursuant to Rule 12(b)(1) and 12(b)(6), Fed.R.Civ.P., on the grounds that federal subject matter jurisdiction is lacking and that that such claims fail to state a claim on which relief can be granted.

## II.     Analysis.[4]

As an initial matter, defendant Jordan argues in his Motion that the Amended Complaint, although framed in terms of federal constitutional violations, in actuality alleges state-law claims for negligence or malpractice.  No doubt, Young could have chosen to present his grievances against his former attorney as state-law malpractice or negligence claims.  Had he done so, such claims would indeed have been outside the scope of federal question jurisdiction pursuant to 28 U.S.C. § 1331.[5]  But that's not what plaintiff did in the Amended Complaint.  Rather, Young's claims against Jordan are unambiguously pleaded as federal *Bivens* claims rooted in a theory that Jordan conspired with May to violate Young's Fifth Amendment rights.  Of course, the plaintiff is the master of his Complaint, and this Court cannot recharacterize Young's claims as something they are not in order to strip federal jurisdiction from this action.  *See generally United States v. Jones*, 125 F.3d 1418, 1428 (11th Cir. 1997) ("The plaintiff is the master of the complaint.  The plaintiff selects the claims that will be alleged in the complaint.").

That determination does not end the Court's inquiry.  As defendant's brief in support of his Motion to Dismiss points out, Young's Amended Complaint is defective because the facts alleged therein (if proven) would not establish a Fifth Amendment violation by anyone.  In particular, the pleading does not allege facts supporting the claim that plaintiff's temporary detention (prior to arraignment in this district) in a BOP facility where he was placed in general population with convicted prisoners trammeled his Fifth Amendment rights.  Case law is legion

---

[4]     For purposes of this analysis, the Court accepts as true the well-pleaded factual allegations of the Amended Complaint and draws all reasonable inferences in Young's favor. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (on a motion to dismiss under Rule 12(b)(6), court must "accept the facts alleged in the complaint as true" and "draw all reasonable inferences in the plaintiff's favor").

[5]     That said, federal supplemental jurisdiction over such claims would have existed pursuant to 28 U.S.C. § 1367 because Young's Amended Complaint packaged them with federal *Bivens* claims against defendant May.  With the dismissal of all claims against May, however, such state-law claims against Jordan would have been the only remaining causes of action, thereby warranting dismissal under 28 U.S.C. § 1367(c)(3).

for the proposition that mere placement of a detainee with convicted prisoners does not implicate (much less infringe upon) the detainee's constitutional rights. *See, e.g., Powell v. Sheriff, Fulton County Georgia*, 2013 WL 842646, *5 (11th Cir. Mar. 7, 2013) ("there is no constitutional right, much less a clearly established one, to be held in a particular cell or a separate area of a Jail and not be placed back in the general Jail population"); *Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir. 1988) (rejecting argument that "pretrial detainees should not be lodged with convicted inmates" on the ground that "classification of inmates, whether or not desirable, is not a constitutional requirement").[6]

---

[6] *See also Burciaga v. County of Lenawee*, 123 F. Supp.2d 1076, 1078 (E.D. Mich. 2000) ("the overwhelming weight of persuasive authority holds that unless the state has an intent to punish, or at least displays an indifference toward potential harm to an inmate, pre-trial detainees have no due process right to be housed separately from sentenced inmates"); *Faulcon v. City of Philadelphia*, 18 F. Supp.2d 537, 540 (E.D. Pa. 1998) (rejecting plaintiff's claim that "Defendants violated his rights by forcing him, as a pretrial detainee, to share housing with a convicted murderer who had just been sentenced to death," in absence of evidence "that the commingling of these populations is so obviously dangerous that to allow it to occur is deliberately indifferent"); *Francis v. Johns*, 2013 WL 1309285, *6 (E.D.N.C. Mar. 28, 2013) ("As other courts have held, the practice of housing civil detainees with convicted inmates does not, by itself, violate a civil detainee's constitutional rights. … [P]laintiff's challenge resting on the commingling of civil detainees and sentenced inmates in the various instances described, cannot survive defendant's motion to dismiss …."); *Julian v. Gusman*, 2011 WL 1399694, *7 (E.D. La. Feb. 28, 2011) ("[I]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials.") (citation omitted); *Langella v. County of McKean*, 2010 WL 3824222, *17 (W.D. Pa. Sept. 23, 2010) ("Following the rationale of *Bell v. Wolfish*, … we find that a pretrial detainee does not have a constitutional right under the Fourteenth Amendment to be housed separately from convicted inmates absent evidence that such housing of the pretrial detainee is for the purpose of punishment."); *Woodhouse v. Carroll*, 2010 WL 3023888, *5 (D. Conn. Aug. 2, 2010) ("While Mr. Woodhouse may not like the fact that he, while held as a pretrial detainee, was forced to share a cell with … a sentenced inmate … that fact, standing alone, simply does not rise to the level of a constitutional violation …."); *Elder v. Williamson*, 2008 WL 4822034, *4 (C.D. Ill. Oct. 27, 2008) ("the practice of housing pretrial detainees with convicted inmates does not, by itself, violate a pretrial detainee's constitutional rights"); *Martin v. Kerney*, 2002 WL 531553, *1 (D. Del. Mar. 27, 2002) ("a lawfully held pre-trial detainee does not have a liberty interest in being housed in a separate unit from sentenced inmates under the Constitution"); *Butler v. Westchester County*, 2000 WL 335539, *4-5 (S.D.N.Y. Mar. 30, 2000) (finding that plaintiff pretrial detainee did not state constitutional violation, where he was transferred from Westchester County Jail to Sing Sing prison for 12 days, and concluding that
(Continued)

At any rate, the Amended Complaint alleges that BOP and/or the Marshal's Service classified Young as a convicted federal prisoner during his pretrial detention period.  Plaintiff is not complaining that pretrial detainees were housed with sentenced inmates as much as he is complaining that his classification as a convicted prisoner was incorrect.  However, that classification decision, without more, is not a Fifth Amendment violation.  *See, e.g., Kirby v. Johnson*, 2007 WL 2228616, *1 (5th Cir. Aug. 3, 2007) ("Kirby's challenges to his classification status and unit placement are without merit; prison officials exercise sole discretion over inmate classification, and inmates do not have a constitutionally protected interest in housing in certain facilities."); *Isler v. Grondolsky*, --- F. Supp.2d ----, 2013 WL 1155251, *4 (D. Mass. Mar. 18, 2013) ("it has been held repeatedly that prisoners have no constitutional right to any specific classification"); *United States v. Jones*, 869 F. Supp.2d 373, 377 (E.D.N.Y. 2012) ("Courts have long recognized that the classification and designation of inmates is a matter within BOP's sole discretion."); *Gigger v. Corrections Corp. of America*, 750 F. Supp.2d 99, 101 (D.D.C. 2010) ("A prisoner has no constitutionally protected interest in his place of confinement or security classification.").

Even if Young's temporary detention in a BOP facility with sentenced inmates were somehow capable of rising to the level of a constitutional deprivation, the Amended Complaint lacks factual allegations identifying what Jordan did to cause or contribute to such a deprivation, much less what he could have done to prevent or ameliorate it.  Likewise, as this Court has previously observed in the context of defendant May's Rule 12(b) motion, there are no well-pleaded facts in the pleadings tending to show that defendant May had anything to do with the U.S. Marshal's Service's and/or the Federal Bureau of Prisons' decision to classify Young as a "federal convicted prisoner" (according to plaintiff), much less where and how to house Young as he was being transported from Tennessee to Mobile, Alabama for arraignment.[7]  Without

---

"Plaintiff's detention did not become punitive simply because he was placed in a facility for convicted inmates").

[7] In that regard, the following excerpt from this Court's Order dated May 22, 2013 is instructive and on point:  "May's conduct of accurately writing Young's BOP inmate number in the upper right hand corner of the warrant did not violate clearly-established law ….  Moreover, the only constitutional violation alleged in the Amended Complaint relates to what USMS and BOP did with that information …, not to May's disclosure of such public information (Continued)

well-pleaded facts supporting a plausible inference that May was responsible for those classification and incarceration determinations, Jordan could not have conspired with May to effectuate such determinations, even assuming they could amount to a Fifth Amendment deprivation in the first place.

In his response brief, Young endeavors to shift the focus of his claims against Jordan away from the Fifth Amendment and towards the Sixth Amendment. As plaintiff now states, "the claim does not rest solely on the Fifth Amendment violation, it also rest [*sic*] on the automatic attachment of the Sixth Amendment." (Doc. 126, at 3.) Setting aside the fact that this argument constitutes a *de facto* attempt to amend his pleading to state a new claim against Jordan, this argument fails as a matter of law. "The Supreme Court has not expressly extended *Bivens* liability to Sixth Amendment claims." *Witchard v. Keith*, 2011 WL 250560, *4 (M.D. Fla. Jan. 26, 2011) (finding that plaintiff failed to state a plausible claim for a Sixth Amendment violation on that basis); *see also Brodie v. Worthington*, 2011 WL 2516041, *4 (D.D.C. June 20, 2011) (plaintiff's § 1983 and *Bivens* claims alleging Sixth Amendment violations by lawyer who represented him at trial "are not cognizable" as a matter of law because counsel neither acted under color of state law nor was a federal officer); *Beasley v. Poole*, 2011 WL 2689347, *8 (E.D. Tenn. July 11, 2011) (rejecting as frivolous plaintiff's claims against his former counsel under *Bivens* because they did not act under color of federal law in representing plaintiff in federal criminal proceedings); *Davis v. Goss*, 2010 WL 1872871, *9 (E.D. Ky. May 10, 2010) ("[A]n attorney does not act under color of federal law in representing a criminal defendant in federal proceedings. … Therefore, a Sixth Amendment civil rights action cannot be maintained against an appointed lawyer … because he does not act under color of federal law.").[8] Thus, no *Bivens*

---

in the first place. Any constitutional beef that Young has is with USMS or BOP, not with May, because they classified him 'as a federal convicted prisoner under the register number: 04152-003,' rather than as a pretrial detainee." (Doc. 110, at 10 n.11.)

[8] In his brief, Young suggests that Jordan "used his federal authority, under color of law" because he is "registered to practice law in the federal courts as that public servant." (Doc. 126, at 2.) Plaintiff is incorrect. As the foregoing authorities demonstrate, Jordan's status as a retained criminal defense attorney practicing law in federal court does not and cannot satisfy the "under color of federal law" component of a *Bivens* claim. What's more, plaintiff's allegations that defendant Jordan (who is assuredly not a federal official) conspired with defendant May (who is) do not remove the ostensible Sixth Amendment claims against Jordan from the ambit of (Continued)

claim asserting Sixth Amendment violations appears cognizable here, and even if it were, the well-pleaded facts of the Amended Complaint establish that Jordan was not acting under color of federal law in his representation of Young.

### III.     Conclusion.

For all of the foregoing reasons, the Court concludes that the federal claims Young has attempted to assert against defendant Jordan fail to state a claim on which relief can be granted, and are therefore due to be dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P. Insofar as plaintiff might now contend that his Amended Complaint should be liberally construed to interpose state-law negligence or malpractice claims against defendant Jordan, those claims are due to be dismissed for lack of federal subject matter jurisdiction, pursuant to Rule 12(b)(1), Fed.R.Civ.P.[9]

---

the foregoing authorities. From everything that plaintiff has pleaded and alleged, the object of the purported conspiracy between Jordan and May was to deprive Young of his Fifth Amendment rights. There is neither allegation nor suggestion that defendants conspired to violate Young's Sixth Amendment rights, only that Jordan's various activities amounted to a Sixth Amendment deprivation. As to any Sixth Amendment claim, then, the conspiracy allegations are irrelevant; rather, Young is suing Jordan under the Sixth Amendment for his conduct as a private attorney. Any such claim is beyond the scope of *Bivens* or § 1983, and is therefore not actionable as a federal cause of action, as a matter of law. Plaintiff's protest that this leaves him without a remedy is misplaced. Again, Young might have brought state-law claims of negligence or malpractice against Jordan; however, he elected not to do so, but instead pursued *Bivens* claims alleging a Sixth Amendment violation. Plaintiff now must bear the consequences of that election.

[9]     In briefing the Motion to Dismiss, plaintiff wrote, "Should the court decide the Bivens Suit cannot be sustained, Petitioner requests the court to transfer the case to the appropriate State Forum under 28 USC 1361 to ensure the statute of limitation is not used as a defense by Jordan." (Doc. 126, at 4.) Although plaintiff transposes two digits of the citation, the relevant statute does provide that in a civil action where a federal court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought …." 28 U.S.C. § 1631. The problem is that this statute only allows for transfers between federal courts, not transfers from a federal court to a state court. *See McLaughlin v. Arco Polymers, Inc.*, 721 F.2d 426, 429 (3rd Cir. 1983) ("Section 1631 does not, however, provide for the transfer of this action to a state court. Both the statutory language and the legislative history show that this provision was directed to the federal court system."); *Tjeltveit v. McDaniel*, 2011 WL 2470616, *3 (D. Nev. June 20, 2011) ("Section 1631 thus is referring to transfer to another *federal* court, not to a state court. It thus is established law that § 1631 does not authorize, much less require, transfers of federal actions to state courts."); *Creative Picture Framing, Inc. v. United Fire Group*, 2009 WL 799754, *3 (E.D. La. Mar. 20, 2009) ("the statute expressly contemplates transfer between (Continued)

Alternatively, the Court declines to exercise supplemental jurisdiction over any such state-law claims because "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

Accordingly, defendant Joe Carl Jordan's Motion to Dismiss (doc. 105) is **granted**, and all of plaintiff's claims asserted against him herein are **dismissed without prejudice**.  A separate judgment will enter.  Because this Order disposes of all remaining claims and causes of action asserted herein, the Clerk's Office is directed to close this file for administrative and statistical purposes.

DONE and ORDERED this 25th day of July, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

two federal courts, as opposed to transfer between a federal court and a state court").  As such, the transfer remedy that Young requests is not available under applicable law.